TAFT AND VANDYKE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 3 October, 1917.)

**Railroads—Commerce—Bills of Lading—Stipulations—Written Notice—Federal Decisions—State Courts.**

> A stipulation in an interstate bill of lading for a shipment of furniture, requiring that a claim for loss or damage must be made in writing to the carrier at the point of delivery or at the point of origin, within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed, is held reasonable and valid, following the decision of the highest Federal Court, which is controlling, in such instances, in the State courts; and when such notice has not been given within the time stated, damages for injury to the shipment will be denied in the courts of the State; and a notation by checking on the freight receipt, made by the agent of the delivering carrier and given to the consignee, is not a compliance with the stipulation stated.

ACTION for damages, tried before *Harding, J.,* at May Term, 1917, of PITT.

Plaintiff appealed.

*S. J. Everett for plaintiff.*
*Skinner & Cooper for defendant.*

WALKER, J. This suit was brought to recover damages for injury to furniture shipped over defendant's line in interstate commerce, the amount claimed being $62.89. The court held, and so adjudged, that plaintiff was not entitled to recover, as he failed to comply with the following stipulation of the bill of lading: "Claims for loss, damage or delay must be made, in writing, to the carrier at the point of delivery or at the point of origin, within four months after the delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable." It appears that the goods arrived at Greenvill,e N. C., on different days in 1914, and the agent saw their condition and noted it on the receipt for the freight charges, which was evidently done to enable the plaintiff to file his claim according to the requirements of the contract between the shipper and the defendant, but the plaintiff did not file any written claim until 10 October, 1914. We have held in several cases that the mere knowledge of the carrier's agent, at the place of delivery, as to the condition of the goods would be sufficient notice and takes the place of a written claim. *Rabon v. R. R.,* 149 N. C., 59; *Kime v. R. R.,* 153 N. C., 398; 156 N. C., 451; 160 N. C., 457; *Duval v. R. R.,* 167 N. C., 24; *Horse Exchange v. R. R.,* 171 N. C., 65; *Baldwin v. R. R.,* 170 N. C., 12; *Mewborn v. R. R., ib.,* 205; *Reynolds v. Express Co.,* 172 N. C., 487. It is said by the Court, in *Mewborn v. R. R., supra,* that this principle, by which actual knowledge acquired by the delivering carrier's agent of the injury to goods, and the extent of the damages, will be a sufficient notice or claim of loss, notwithstanding the provisions in the bill of lading, that the claim shall be in writing, will be adhered to by this Court, in the absence of a contrary decision of the highest Federal Court. At the October Term, 1916, the United States Supreme Court decided that such a stipulation in a bill of lading is reasonable and valid, and must be complied with by the shipper, and if he does not comply with it he cannot recover damages (*St. Louis, etc., B. Co. v. Starbard,* 37 S. C. Reporter, 462 [30 April, 1917]), and that actual knowledge of the agent of the carrier as to the condition of the goods is not equivalent to such claim of loss. Referring to this case, we said, at this term, in *Bryan v. L. & N. R. Co.*: "We are of opinion that the verbal notice to the clerk in the Coast Line office is not a compliance with the contract. It is stipulated that the notice shall be in *writing.* There are very obvious reasons why written notice should afford more protection to the carrier than mere verbal notice to some clerk in the office, who may overlook it. Our decisions have been to the contrary, but the Supreme Court of the United States has recently decided, in *St. Louis, I., M. & S. R. Co. v. Starbird,* 37 S. C. Rep., 462 (30 April, 1917), that "A stipulation in a through bill of

lading for an interstate shipment of peaches that the carrier issuing the bill of lading shall not be held liable for damages unless a claim for damage is reported by the consignee in *writing* to the terminal carrier within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery, is valid and not unreasonable."

It is useless to quote more from the opinion. The whole tenor of it indicates that the court regarded the stipulation that the notice must be in writing as an essential part of the contract, and that unless complied with, a recovery cannot be had." As the Court also said in that case, it is not difficult for the consignee to comply with a requirement of this kind, and give notice in writing to the agent of the delivering carrier. Such notice puts in permanent form the evidence of an intention to claim damages, and will serve to call the attention of the carrier to the condition of the freight, and enable it to make such investigation as the facts of the case require while there is opportunity so to do. The Court said, in *Southern Express Co. v. Caldwell,* 21 Wall. (88 U. S.,), 264, that a stipulation of this kind is valid. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence and of capacity, which the strictest rules of the common law ever required. And it is intrinsically just. The Court held that the responsibility of a common carrier may be limited by an express agreement made with his employer at the time of his accepting goods for transportation, provided the limitation be such as the law can recognize as reasonable and not inconsistent with sound public policy; and, further, that an agreement that in case of failure by the carrier to deliver goods, he shall not be liable unless a claim shall be made by the bailor, or by the consignee, within a specified period, if that period be a reasonable one, is not against the policy of the law, and is valid. It purported to relieve the defendants from no part of the obligations of a common carrier. They were bound to the same diligence, fidelity and care as they would have been required to exercise if no such agreement had been made. All that the stipulation required was that the shipper, in case the package was lost or damaged, should assert his claim in season to enable the defendants to ascertain the facts; in other words, that he should assert it within ninety days. *Queen of the Pacific,* 180 U. S., 49 (45 L. Ed., 429). And this Court decided the same way in *Lytle v. Telegraph Co.,* 165 N. C., 504, and, further, that the stipulation as to a written claim for loss was not complied with by a verbal statement to the agent of the company that the particular message had been delayed and the company would have to pay for it.

In this case there was no written notice of loss given, nor even any verbal or written statement by the consignee that he intended to claim any damages, until long after the four months had expired, although he had ample time to file such a notice or claim of loss. The receipt for freight charges was handed to the consignee by the agent, and he has it now, but the notation thereon was no compliance with the stipulation in the bill of lading. It may be added that the consignee himself took our view of the matter as to this stipulation, and was conscious that a written claim of loss was required of him, because he did file such a claim, but entirely too late to be of any service to him. The carrier would be at a great disadvantage if he had to rely upon mere knowledge of his agent, or a verbal notice to him, say the Federal courts, for it would result in great confusion and uncertainty as to the nature of claims, and prevent their orderly and intelligent consideration. In many cases the special facts would be involved in doubt if carriers had to rely upon the memory of their agents as to claims for losses.

It follows that there was no error in the ruling of the court.

No error.