**REIDER v. THOMPSON.**

No. 13838.

United States Court of Appeals
Fifth Circuit.

June 6, 1952.

Rehearing Denied July 14, 1952.

---

2. Johnson v. U. S., 6 Cir., 46 F.2d 7, 9; Davis v. U. S., 5 Cir., 35 F.2d 957; Rule 41, Federal Rules of Criminal Procedure, 18 U.S.C.

Malcolm W. Monroe, New Orleans, La., for appellant.

M. Truman Woodward, Jr., Elizabeth Ridnour Haak, New Orleans, La., for appellee.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

The trial here under review followed the decision of the Supreme Court in Reider v. Thompson, 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698, reversing 5 Cir., 176 F.2d 13, that Reider's complaint, seeking to recover damages claimed to have been inflicted upon a shipment of sheepskins and wools while being transported under a through bill of lading from New Orleans, Louisiana to Boston, Massachusetts, set forth a claim upon which relief could be granted. At the conclusion of the plaintiff's evidence, the Court, trying the case without a jury granted appellee's motion to dismiss and entered judgment according-

ly. This ruling was induced by the Court's conclusion that the appellant had failed to introduce evidence sufficient to prove the amount of his damages because it appeared that the sheepskins, which the evidence disclosed were received in a damaged condition, were subsequently sold, and the evidence for the plaintiff did not disclose the sales price.[1] The matter of sales price was not inquired about upon either direct or cross examination of the plaintiff, who testified to the fact of sale.

The evidence as to the amount of damage is furnished by the testimony of Gale, a cargo surveyor and appraiser, and appellant. Gale had been in the business of surveying cargoes and merchandise for approximately 17 years (in 1944). He testified that he made between three and four hundred surveys per year, ten to twenty per cent of which involved shipments of leather. He inspected the shipment in question in September, 1944, and found that seven cases containing sheepskins evidenced that they had been penetrated by water and that the contents were water stained and molded and that there was "quite some rotting." He estimated that the sheepskins in these seven cases had sustained a "depreciation" of 27½ per cent. Appellant, who had been in the business of importing and exporting leather for approximately 20 years (in 1944), testified that the sheepskins contained in the seven cases were stained and moldy. The fair market value of these skins in Boston at that time, had they been undamaged, would have been $5,400. The market varied, however, according to the ceiling price fixed by the Office of Price Administration, but at that time the price was "17 cents to 19 cents a foot if they were in good condition." In his opinion the fair market value of the sheepskins in their damaged condition as he observed them was $2,700 in Boston at that time. He also testified that none of the sheepskins were still in his possession on November 1, 1950, but that

they were "all sold. At that time everything was going. Normally they would not be able to sell it."

We find the evidence sufficient to establish a *prima facie* case of the market value of the sheepskins had they been received in good condition, and their market value in the condition in which they did arrive. This is the well established measure of damages in such cases. Gulf, Colorado & S. F. Ry. Co. v. Texas Packing Co., 244 U.S. 31, 37, 37 S.Ct. 487, 61 L.Ed. 970; Chicago, M. & St. P. R. Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801; St. Johns N. F. Shipping Corp. v. S. A. Companhia, 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201.

It is true that the amount received by a sale may be fundamental in restricting or defeating the right of recovery. But the sales price is not conclusive, nor controlling. As said in New York, Lake Erie & Western R. Co. v. Estill, 147 U.S. 591, 618, 13 S.Ct. 444, 455, 37 L.Ed. 292:

"The plaintiffs may have received on the sale of the cattle more or less than their market value. The defendant might have brought out evidence as to what the animals were sold for by the plaintiffs, to contradict the evidence as to their market value; but the plaintiffs could not bind the defendant by the prices for which the animals were sold."

The admission that the damaged goods had been sold, conjoined with the absence of proof as to the amount thereby received, is not at all fatal to the plaintiff's right of recovery where the legal measure of damages is otherwise properly shown, although as a matter of defense of course the amount received by the sale may be shown to diminish or defeat the recovery of damages. The trial Court erred in ruling to the contrary. The case should have been disposed of on the merits, and not dismissed as a matter of law.

1. The Court thought its ruling supported by Illinois Central R. Co. v. Crail, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699; Cincinnati Siemens-Lungren Gas Illuminating Company v. Western Siemens-Lun-gren Co., 152 U.S. 200, 14 S.Ct. 523, 38 L.Ed. 411; Weirton Steel Co. v. Isbrandt-sen-Moller Co., Inc., 2 Cir., 126 F.2d 593, but we do not find these decisions applicable here.

■■ It is also urged that the evidence as to the fair market value of the damaged sheepskins at the time and place of receipt is not satisfactory, because it consists wholly of opinion testimony. The best evidence, appellee contends, would be evidence as to the price at which they were sold. Here again appellee assumes that the measure of damages is to be determined by the amount for which the goods were sold and disregards the proposition that the measure of damages is a rule of law and the ascertainment of damages is a matter of evidence. Appellant presented evidence which, if credited by the trier of facts, was sufficient to authorize a finding in his favor. If there were circumstances existing which showed that the general rule of damages binding upon the plaintiff was not proper here because its application would result in awarding the plaintiff more than indemnity, these should have been developed and disclosed as a matter of defense. However, if this be done by proof of the price received from a sale it is, in substance, an impeachment of the existence or amount of damages rather than the establishment of a different measure of damages.

Another ground of the motion to dismiss asserted that the evidence failed to show that the merchandise was received by the carrier in good condition. The trial Court pretermitted this question and made no findings of fact relative thereto, except to observe "that the evidence itself is not very satifactory." The appellant, stating that the record contains all of the evidence available to him upon this question, invokes a ruling upon its legal sufficiency. The appellee, recalling the trial Court's failure to pass upon this feature of the case, insists that the question is not before us and that appellant's argument amounts only to the expression of apprehension that when, and if, the case is considered upon its merits the trial Court will determine the point unfavorably to appellant. In view of the fact that a new trial is ordered, we, of course, express no opinion upon the weight or credibility of the testimony, but think it well to indicate the law applicable to such a situation as may likely occur in the further progress of the cause.

■ The shipment in question followed an ocean shipment. Evidence was introduced to show that the exterior of the boxes was in good condition and that there were no water stains apparent at the time of the issuance of the bill of lading and transshipment. The bill of lading recited receipt in "apparent good order", but that the "contents and condition of contents of packages [were] unknown." These provisions are considered to relate to the external condition of the packages and do not establish the condition of the contents.[2] However, when packages are received by the carrier in acknowledged good external condition but are delivered by the carrier in a damaged or stained condition which could reasonably and logically be found to indicate that the discovered damage or deterioration of the contents resulted from the cause indicated by the condition of the external package, theretofore received in good condition, the trier of facts may infer from these circumstances that damage to the contents was occasioned by the negligence of the carrier in the respect indicated by the changed external condition of the package. "The outturn itself" may be considered as evidence.[3] We, of course, do not anticipate the scope and effect of the evidence, or the weight and credit the trier of facts should accord it upon another trial when the testimony and all the circumstances of the case will be considered in the light of the applicable principles to which we have referred.

The order dismissing the complaint is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

2. The Neil Maersk, 2 Cir., 91 F.2d 932; The Donde, D.C., 287 F. 239.

3. The Glasgow Maru, 2 Cir., 102 F.2d 450; The Ponce, D.C., 67 F.Supp. 725. affirmed 2 Cir., 160 F.2d 107; The Solveig, D.C., 217 F. 805, 807.